ORIGINAL

**SEALED**



FILED-USDC-NDTX-DA
'26 JUN 23 PM3:16
JJF

## FILED UNDER SEAL

### CONTAINS SENSITIVE COOPERATION INFORMATION — DO NOT DISCLOSE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**UNITED STATES OF AMERICA,**
  Plaintiff,
  v.
**CARLOS LUIS VENEGAS,**
  Defendant.

Case No. 3:16-cr-00479-N
(Honorable David C. Godbey)

### DEFENDANT'S MOTION TO SEAL AND
### SEALED MOTION FOR REDUCTION OF SENTENCE PURSUANT TO
### 18 U.S.C. § 3582(c)(1)(A)(i)

*(Extraordinary and Compelling Circumstances — Post-Sentencing Substantial Assistance)*

### MOTION TO SEAL

Defendant Carlos Luis Venegas respectfully moves this Court pursuant to Local Criminal Rule 55.2 and the Court's inherent authority to order that this motion and all supporting exhibits be filed and maintained under seal. In support thereof, Mr. Venegas states:

1. This motion contains detailed information regarding Mr. Venegas's cooperation with federal law enforcement, including the identities of correctional officers, federal prosecutors, and other individuals involved in the investigation and prosecution of John Robert Bond.

2. Public disclosure of the specific details of Mr. Venegas's cooperation — including the identity of the inmate who first conveyed the threat (Jesse Garcia, Fed. No. 24431-279) and the operational details of how the report was made — could expose Mr. Venegas and others to retaliation and endanger their safety.

3. Courts routinely seal cooperation-related filings to protect the safety of defendants who have provided assistance to law enforcement. See, e.g., United States v. Andrade, 83 F.3d 729 (5th Cir. 1996); cf. Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (recognizing that safety and integrity of proceedings may justify sealing).

4. The government has a parallel interest in maintaining the confidentiality of cooperation information that could compromise ongoing investigations or endanger cooperating individuals.

5. The need to protect Mr. Venegas's safety and the integrity of the cooperation record outweighs any public interest in immediate access to the specific details contained herein. A redacted public docket entry reflecting only the nature of the filing — a motion for sentence reduction — adequately serves the public's interest in transparency.

WHEREFORE, Mr. Venegas respectfully requests that the Court order this motion and all attached exhibits filed and maintained under seal, with access restricted to the Court, counsel of record, and the government.

## I. INTRODUCTION

Defendant Carlos Luis Venegas (Reg. No. 54988-177), proceeding pro se, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b)(4) and (b)(5) (Nov. 2023 amendments) for a reduction of his sentence to time served. The basis for this motion is extraordinary and compelling: Mr. Venegas, while in federal custody, directly initiated the chain of events that led to the arrest, indictment, guilty plea, and 57-month federal sentence of fellow inmate John Robert Bond, who had formulated a concrete plan to bomb the home of the Federal Correctional Complex Beaumont camp administrator upon his release.

Mr. Venegas's intervention was not the product of any cooperation agreement, plea deal, or promise of benefit. It was an act of civic conscience — one that protected a federal official from a credible, documented threat and resulted in a significant federal prosecution. The government has never moved for a Rule 35(b) reduction despite being fully aware of Mr. Venegas's role. Under the Sentencing Commission's November 2023 amendments to § 1B1.13, this Court has independent authority to act. A sentence reduction to time served is warranted.

## II. JURISDICTION AND LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. 115-391, § 603(b), a sentencing court may reduce a term of imprisonment upon motion of the defendant after: (1) the defendant has fully exhausted administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or (2) the lapse of 30 days from the warden's receipt of a compassionate release request, whichever is earlier. As set forth in Section V below, administrative exhaustion is excused here under the futility doctrine. This Court therefore has jurisdiction to act.

Upon exhaustion or its excuse, the Court must find that (1) extraordinary and compelling reasons warrant a reduction; (2) the reduction is consistent with applicable Sentencing Commission policy statements; and (3) the 18 U.S.C. § 3553(a) factors support the reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

Effective November 1, 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13 to restore district courts' authority to independently identify extraordinary and compelling circumstances. Two provisions are directly applicable here:

§ 1B1.13(b)(4) — Post-Sentencing Substantial Assistance: A defendant who provided substantial assistance to law enforcement after sentencing that was not considered at the time of the original sentence presents extraordinary and compelling circumstances, particularly where the government has failed to move under Fed. R. Crim. P. 35(b) despite the defendant's documented cooperation.

§ 1B1.13(b)(5) — Other Reasons: A court may reduce a sentence based on "any other circumstance or combination of circumstances that, when considered by themselves or together

with any of the reasons described in paragraphs (1) through (4), are similar in gravity" to the enumerated circumstances.

Mr. Venegas's post-sentencing conduct satisfies both provisions independently and conjunctively.

## III.  FACTUAL BACKGROUND

### A.  The Bond Threat

In May 2025, while residing at the Federal Correctional Complex in Beaumont, Texas, Mr. Venegas was approached by fellow inmate Jesse Garcia (Fed. No. 24431-279), housed in GB A unit — the same unit where John Robert Bond resided. Garcia was alarmed: Bond had confided in him on multiple occasions that upon his impending release, he intended to bomb the home of the camp administrator, Ms. Brown. Bond was scheduled for release on June 13, 2025.

### B.  Mr. Venegas's Report and the Institutional Response

Upon learning of this plan, Mr. Venegas immediately brought the information to Correctional Officer Lindsey, who was supervising the camp chow line that day and who had direct knowledge of Bond through Bond's chow hall work assignment. CO Lindsey recognized the credibility and gravity of the threat and escalated it to the officer in charge of the camp, CO Williams. A search of Bond's cell was promptly conducted. Investigators found notes describing the administrator and the location of her home — direct corroboration of the threat Bond had communicated to Garcia. Bond was placed in the Special Housing Unit (SHU) and was not released as scheduled.

### C.  FBI Investigation

Federal investigators from the FBI became involved following the cell search. Weeks after the incident, inmate Garcia informed Mr. Venegas that he had been interviewed by FBI agents concerning Bond's conduct, and that Garcia identified Mr. Venegas to the investigators as the person who had first reported the threat to prison administration.

### D.  Mr. Venegas's Meeting with AUSA Ross

On August 28, 2025, Mr. Venegas met with Assistant United States Attorney John B. Ross — the lead prosecutor assigned to the Bond matter — concerning the information Mr. Venegas had provided regarding Bond's threat. AUSA Ross is the same attorney listed as lead prosecutor in the government's March 11, 2026 press release regarding Bond's sentencing.

### E.  Administrator Brown's Acknowledgment

In January 2026, Mr. Venegas met personally with Camp Administrator Brown — the intended victim of Bond's threat — and requested that she contact AUSA Ross to recommend that Mr. Venegas be considered for a sentence reduction based on his participation in the Bond case. Administrator Brown stated that she would reach out to AUSA Ross that week and accepted defense counsel's contact information. This communication is documented in a contemporaneous email from Mr. Venegas to his retained attorney, Patrick J. McLain, dated January 12, 2026. See Exhibit A.

### F.  Bond's Prosecution and Sentence

On July 3, 2025, John Robert Bond was indicted in the Eastern District of Texas for making threats against a federal official. On March 11, 2026, Bond pleaded guilty and was sentenced to 57 months in federal prison by U.S. District Judge Michael J. Truncale. The case was investigated by the FBI and prosecuted by AUSAs John B. Ross and Chris Jackson. See U.S. Dep't of Justice Press Release (Mar. 11, 2026), attached as Exhibit B.

### G. No Government Rule 35(b) Motion

Despite Mr. Venegas's documented cooperation, his direct meeting with AUSA Ross, and the camp administrator's stated intention to advocate on his behalf, the government has filed no Rule 35(b) motion. Mr. Venegas is left without any mechanism for recognition of his substantial assistance other than this Court's independent authority under § 3582(c)(1)(A)(i).

## IV. ARGUMENT

### A. Extraordinary and Compelling Reasons Exist

1. Section 1B1.13(b)(4) — Post-Sentencing Substantial Assistance

Section 1B1.13(b)(4) authorizes a court to find extraordinary and compelling circumstances where a defendant provided substantial assistance to law enforcement after sentencing that was not taken into account at the time of the original sentence. The provision was added precisely to address cases like this one — where a defendant's cooperation is genuine and consequential but the government, for whatever reason, fails to move under Rule 35(b).

Mr. Venegas's assistance was substantial by any measure. He identified a specific, credible threat against a named federal official. He reported it through proper channels at personal risk. The report led directly to a cell search that produced physical evidence corroborating the threat. That evidence formed the basis of a federal indictment, a guilty plea, and a 57-month sentence. The prosecuting AUSA met personally with Mr. Venegas regarding his role. The intended victim personally acknowledged his contribution and committed to advocating for him with the prosecutor. This is not peripheral cooperation — it is the foundational act that initiated the entire prosecution.

2. Section 1B1.13(b)(5) — Other Extraordinary and Compelling Circumstances

Independently, § 1B1.13(b)(5) permits relief based on any circumstance of comparable gravity to those enumerated in the guidelines. The circumstances here are extraordinary by any standard: a federal inmate, serving his own sentence, intervened to prevent a planned bombing of a federal official's home; his intervention was corroborated by physical evidence; it produced a federal conviction and a nearly five-year sentence for the would-be bomber; the intended victim personally recognized his role; and the government's own prosecutor acknowledged his cooperation through a formal meeting. The combination of these facts — the severity of the threat neutralized, the consequential prosecution produced, and the complete absence of any governmental recognition through normal channels — is precisely the gravity Congress and the Commission contemplated.

### B. The Section 3553(a) Factors Support a Reduction

Nature and circumstances of the offense. Mr. Venegas was convicted of conspiracy to distribute. His post-sentencing conduct — voluntarily intervening to prevent violence against a federal official — demonstrates a character dimension not reflected in the offense conduct alone.

History and characteristics of the defendant. Mr. Venegas's decision to come forward, his willingness to meet with federal prosecutors, his personal engagement with the intended victim, and his persistent good-faith efforts to have his cooperation recognized all reflect characteristics that § 3553(a)(1) directs courts to consider.

Deterrence and protection of the public. A sentence reduction here serves general deterrence by signaling to the inmate population that genuine cooperation with law enforcement will be recognized by courts even when the government declines to act. It does not undermine the purposes of the original sentence.

Just punishment and respect for the law. The original sentence was fashioned without knowledge of what Mr. Venegas would do. A reduction to time served acknowledges that the sentence, as imposed, no longer fully reflects the history and characteristics of this particular defendant at this stage of his case.

Danger to the community. Mr. Venegas's conduct is affirmative evidence that he does not present a danger. An individual who reports a bombing plot to protect a federal official, at personal risk and without expectation of reward, does not present an unacceptable risk to the community.

## V.  ADMINISTRATIVE EXHAUSTION — FUTILITY EXCUSES THE REQUIREMENT

Section 3582(c)(1)(A) conditions a defendant's direct filing on either exhaustion of BOP administrative remedies or the lapse of 30 days from the warden's receipt of a request. Courts in the Fifth Circuit and elsewhere have recognized, however, that the exhaustion requirement is excused where resort to the administrative process would be futile. See, e.g., United States v. Alam, 960 F.3d 831, 835 (6th Cir. 2020) (recognizing futility and waiver exceptions); cf. Washington v. Barr, 925 F.3d 109, 118-19 (2d Cir. 2019) (futility excuses exhaustion where agency cannot grant relief or predetermination is evident). Exhaustion is excused here for three independent reasons.

First, the government is already in possession of every material fact underlying this motion. AUSA Ross met directly with Mr. Venegas on August 28, 2025. The FBI investigated the matter. The government prosecuted Bond to a 57-month sentence. There is no administrative fact-finding function for the BOP to perform — the record is complete and the government's position is known.

Second, the government has had ample opportunity — spanning more than ten months since AUSA Ross's meeting with Mr. Venegas, through Bond's indictment, guilty plea, and sentencing — to move under Rule 35(b) and has declined to do so. The BOP's administrative process adds no pathway to relief that the government has not already foreclosed by inaction.

Third, requiring Mr. Venegas to await a BOP administrative response before this Court may act would impose a purely formal delay with no substantive benefit. The BOP has no authority to grant the relief requested — a sentence reduction — and its referral mechanism to the sentencing court is the same mechanism Mr. Venegas invokes here directly. Where the administrative process cannot provide the requested relief and the outcome of any referral is predetermined by the government's established position, exhaustion is excused as futile.

Should the BOP or the government respond to Mr. Venegas's administrative request — whether by recommendation or denial — that response will be filed as a supplemental exhibit to this motion and incorporated into the record.

## VI.  RELIEF REQUESTED

For the foregoing reasons, Carlos Luis Venegas respectfully requests that this Court:

1.  Find that administrative exhaustion is excused under the futility doctrine;

2.  Find that extraordinary and compelling reasons exist under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b)(4) and (b)(5);

3.  Find that the 18 U.S.C. § 3553(a) factors support a sentence reduction;

4.  Reduce Mr. Venegas's sentence to time served, with no additional term of supervised release; and

5.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Carlos Luis Venegas
Reg. No. 54988-177
18 Intrepid Circle, Rockwall, Texas 75032
Pro Se

Dated: June 23, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on 23 June , 2026, I served a true and correct copy of the foregoing Motion upon the United States Attorney's Office for the Northern District of Texas, Dallas Division, by [U.S. Mail / electronic service], addressed to:

United States Attorney's Office

Northern District of Texas

1100 Commerce Street, Third Floor

Dallas, Texas 75242

/s/ Carlos Luis Venegas

## EXHIBIT LIST

Exhibit A — Email from Carlos Venegas to Patrick J. McLain, January 12, 2026 (documenting meeting with Camp Administrator Brown and her commitment to contact AUSA Ross)

Exhibit B — U.S. Department of Justice Press Release, Eastern District of Texas, "Federal inmate sentenced for threatening Bureau of Prisons Administrator" (March 11, 2026)

Exhibit C — [If received: BOP/Warden response to administrative request; if no response: email to Dr. Dinis dated June 23, 2026 with proof of transmission]